# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 2859 | **DATE** | 7/28/2011 |
| **CASE TITLE** | Wallace vs. City of Zion et al | | |

**DOCKET ENTRY TEXT**

The Court denies Defendants' motion to dismiss [31] and grants Plaintiffs leave to file a Second Amended Complaint in compliance with this order by no later than 8/11/11.

■[ For further details see text below.]

Notices mailed by Judicial staff.

---

## STATEMENT

On May 27, 2011, Plaintiffs Lamont Wallace, Danielle Russ, and their minor daughter, C.W., filed the present eleven-count First Amended Complaint against the City of Zion, Illinois, certain Zion police officers, the Zion-Benton Public Library District (the "Library District"), and the Board of Trustees of the Library District (the "Board"). In their First Amended Complaint, Plaintiffs allege the following constitutional claims: false arrest/unlawful detention (Count I); excessive force (Count II); interference with the parent-child relationship (Count III); denial of medical attention (Count IV); conspiracy (Count V); and failure to intervene (Count VI). *See* 42 U.S.C. § 1983. Plaintiffs also bring state law claims of malicious prosecution (Count VII); intentional infliction of emotional distress (Count VIII); conspiracy (Count IX); respondeat superior (Count X); and indemnification (Count XI) pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Before the Court is Defendants A. Thomas Jones', the Library District's, and the Board's motion to dismiss Counts III, V, VII, VIII, IX, X, and XI pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies Defendants' motion in its entirety. The Court grants Plaintiffs leave to file a Second Amended Complaint in compliance with this order by no later than August 11, 2011.

Continued...

| | Courtroom Deputy Initials: | KF |
|---|---|---|

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L.Ed.2d 1081 (2007).

## BACKGROUND

Plaintiff Lamont Wallace is a 51-year-old Illinois native, who during the relevant time period was working as a youth mentor. (R. 30, First Am. Compl. ¶ 4.) His partner, Plaintiff Danielle Russ, is a 43-year-old professor, and Plaintiff C.W. is their four-year-old daughter. (*Id.*) Also during the relevant time period, Defendants Jason Adams, Alan Lother, Michael Gildea, Jon Meyers, Agustin Cabalquinto, and the unknown Zion Police Officers ("Defendant Police Officers") were police officers employed by the City of Zion and acting under the color of law and within the scope of their employment for the City of Zion. (*Id.* ¶ 8.)

On August 5, 2009, Wallace and Russ took their then two-year-old daughter to the Zion-Benton Public Library to check out some children's videos. (*Id.* ¶ 10.) While Russ was collecting the videos her daughter wanted, Wallace and C.W. perused the children's books and played with the toys that the library had set out for children. (*Id.* ¶ 12.) Defendant A. Thomas Jones, the security supervisor at the library, noticed Wallace and his daughter and began following them around the library. (*Id.* ¶¶ 9, 12.) When Wallace sat down with his daughter at a games table in the children's section, Jones told them that they could not sit there after which Wallace and his daughter moved. (*Id.* ¶ 12.) Plaintiffs allege that Jones approached Wallace and C.W. three separate times at which time Jones verbally harassed them. (*Id.* ¶ 13.)

Russ then approached Wallace, after which Plaintiffs decided to report Jones' behavior to the library supervisor. (*Id.* ¶ 14.) While Plaintiffs were speaking with the supervisor, Jones went into the staff office, called the Zion Police Department, and asked for police officers to come to the library. (*Id.*) Shortly thereafter, Defendant Zion Police Officer Jason Adams entered the library and Wallace tried to explain that Jones had been harassing his family. (*Id.* ¶ 15.) Adams, however, would speak only with Jones and ordered Wallace to leave the library to which Wallace complied. (*Id.*) Plaintiffs allege that Russ then tried to explain what had happened to Adams, who refused to speak with her. (*Id.* ¶ 16.) Instead, Adams put his hand in Russ' face and said, "Shut your mouth – I don't want to hear another word from you!" or words to that effect. (*Id.*) Wallace observed this incident and then re-entered the library lobby to tell Adams that he should not speak to his family that way. (*Id.* ¶ 17.) All three Plaintiffs then immediately left the library. (*Id.*) Adams followed Plaintiffs out of the library and shouted, "You're under arrest!" or words to that effect, while holding out a can of pepper spray. (*Id.* ¶ 18.)

Defendant Zion Police Officer Alan Lother, who was outside the library, joined Adams and one or more of the other Defendant Police Officers in forcibly arresting Wallace. (*Id.* ¶ 19.) Plaintiffs allege that Lother grabbed Wallace from behind and forced him to the ground, after which one or more of the Defendant Police Officers handcuffed Wallace and pulled his wrists up to the middle of his back. (*Id.*)

Plaintiffs allege that Defendant Police Officers then pushed and punched Wallace about the sides of his body and face. (*Id.*) Wallace maintains that at no time did he resist the officers. (*Id.* ¶ 20.) After hitting, kicking, and pushing Wallace, Defendant Police Officers placed him in the back of a police squad car. (*Id.*)

Plaintiffs further allege that Russ and C.W. watched in horror and then Russ tried to use her cellular telephone to take pictures of the arrest, which angered Defendant Police Officers who forced her to the ground and handcuffed her. (*Id.* ¶¶ 21, 22.) During Russ' arrest, Defendant Police Officers repeatedly pushed and hit her. (*Id.* ¶ 22.) Plaintiffs also allege that after Wallace saw Defendant Police Officers attacking Russ, he kicked the rear window of the police squad car after which one of the Defendant Police Officers pepper-sprayed him in the face and head, getting the spray into his eyes, ears, and nose, and leaving him temporarily unable to breathe. (*Id.* ¶ 23.) Russ tried to tell a bystander to take C.W. to Wallace's mother, who lived nearby, but one of the Defendant Police Officers stopped them from communicating and threatened to report Russ and Wallace to the Illinois Department of Children and Family Services ("DCFS"). (*Id.* ¶ 24.)

Defendant Police Officers then transported Wallace and Russ to the Zion police station, where they were held for several hours. (*Id.* ¶ 25.) Although both Wallace and Russ sustained visible injuries and complained of these injuries, Defendant Police Officers denied them medical treatment while they were in custody. (*Id.*)

Plaintiffs further allege that Defendants, acting in concert, caused Wallace to be falsely charged with obstructing a peace officer and resisting a peace officer – charges that were dismissed on April 28, 2010. (*Id.* ¶ 26.) Similarly, Plaintiffs allege that Defendants, acting in concert, caused Russ to be falsely charged with fourteen misdemeanor crimes, including battery of a police officer, criminal trespass, obstruction of justice, and endangering the health of a child. (*Id.*) All charges against Russ were dismissed on April 28, 2010. (*Id.*) In addition, Plaintiffs allege that one or more of the Defendants, acting alone or in concert, reported Russ and Wallace to the Illinois DCFS without any reasonable basis for doing so. (*Id.* ¶ 28.) In May 2011, the DCFS proceedings were resolved in Plaintiffs' favor. (*Id.* ¶ 29.)

## ANALYSIS

### I.      Counts III and V – Claims against Defendant Jones in his Official Capacity

Defendants first argue that because Plaintiffs did not allege whether they are suing Defendant Jones in his individual or official capacity, the claims against him in Counts III and V must be dismissed because Plaintiffs failed to allege that the Library District has a custom or practice as required under *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Put differently, Defendants argue that because Plaintiffs' First Amended Complaint does not specifically state that Jones is being sued in his individual capacity, the Court must assume that Plaintiffs are suing him in his official capacity, which would then be against the Library District. *See Fairley v. Fermaint,* 482 F.3d 897, 904 (7th Cir. 2007) ("units of local government are responsible only for their policies rather than misconduct by their workers.").

In response, Plaintiffs maintain that they intended to sue Jones in his individual capacity and that Defendants rely on outdated cases that presume a defendant is being sued in his official capacity if a plaintiff does not designate whether he is suing a public official in his official or individual capacity. *See Kolar v. Sangamon County of State of Ill.,* 756 F.2d 564, 568 (7th Cir. 1985). The Court agrees. *See Miller v. Smith,* 220 F.3d 491, 494 (7th Cir. 2000) (distinguishing *Kolar*). Meanwhile, the Court reminds the parties that arguments made for the first time in a reply brief are waived "to ensure that the opposing party is not prejudiced by being denied sufficient notice to respond to an argument." *Hernandez v. Cook County Sheriff's Office,* 634 F.3d 906, 913 (7thy Cir. 2011). The Court therefore denies Defendants' motion as to Counts III and V and grants Plaintiffs leave to file a Second Amended Complaint alleging that they are suing Jones in his individual capacity.

## II.   Count VII – Malicious Prosecution Claim

Next, Defendants argue that Plaintiffs' state law claim of malicious prosecution fails to properly allege that Jones commenced the criminal proceedings against Russ and Wallace.  To establish a malicious prosecution claim under Illinois law, Plaintiffs must show: "(1) the commencement or continuation of an original criminal or civil proceeding by the defendants; (2) termination of the proceeding in his favor; (3) the absence of probable cause; (4) the presence of malice on the defendants' part; and (5) damages." *See Swearnigen-El v. Cook County Sheriff's Dept.,* 602 F.3d 852, 863 (7th Cir. 2010) (citing *Ross v. Mauro Chevrolet,* 369 Ill.App.3d 794, 308 Ill.Dec. 248, 861 N.E.2d 313, 319 (Ill.App.Ct. 2006)).  In addition, "Illinois law requires that, in order to commence or continue a criminal proceeding, the defendant must have initiated the criminal proceeding or 'his participation in it must have been of so active and positive a character as to amount to advice and cooperation.'" *Logan v. Caterpillar, Inc.,* 246 F.3d 912, 922 (7th Cir. 2001) (quoting *Denton v. Allstate Ins. Co.*, 152 Ill.App.3d 578, 105 Ill.Dec. 471, 504 N.E.2d 756, 760 (Ill.App.Ct. 1987)).

Here, Defendants argue that Plaintiffs' First Amended Complaint does not sufficiently allege facts against Jones under the first element of a malicious prosecution claim, namely, that he initiated a proceeding against the adult Plaintiffs.  Under Illinois law, "[l]egal causation will be attributed to a private citizen only if the plaintiff can demonstrate that the defendant (1) instituted the proceedings against the plaintiff; (2) knowingly made false statements to the police; *or* (3) requested, directed, or pressured the officer into swearing out the complaint for the plaintiff's arrest." *Logan,* 246 F.3d at 922 (emphasis added).  In other words, under Illinois law "when a citizen knowingly gives false information to a police officer, who then swears out a complaint, the officer's action may be attributed to the citizen." *Rodgers v. Peoples Gas, Light & Coke Co.,* 315 Ill.App.3d 340, 349, 248 Ill.Dec. 160, 733 N.E.2d 835 (Ill.App.Ct. 2000).

Construing the facts in Plaintiffs' favor, they have alleged that Jones made false statements contributing to the commencement of the criminal proceedings against them when he reported Plaintiffs to the police for wrongdoing although they allege that they did nothing wrong.  (*See* First. Am. Compl. ¶¶ 14, 15.)  Plaintiffs also allege that Jones acted with malice and reckless indifference to their rights.  (*Id*. ¶ 64.)  Accordingly, Plaintiffs have alleged sufficient facts stating a claim for malicious prosecution against Jones that is plausible on its face. *See Twombly,* 550 U.S. at 570; *see, e.g., Ferrell v. Harrington,* No. 07 C 3027, 2007 WL 3307026, at *3 (N.D. Ill. Nov. 2, 2007).  The Court therefore denies Defendants' motion to dismiss the malicious prosecution claim as alleged in Count VII of the First Amended Complaint.

## III.   Count VIII – Intentional Infliction of Emotional Distress Claim

Defendants also argue that Plaintiffs' intentional infliction of emotional distress ("IIED") claim is barred by the Illinois Tort Immunity Act's one year limitations period. *See Evans v. City of Chicago,* 434 F.3d 916, 934 (7th Cir. 2006); 745 ILCS 10/8-101.  In response to Defendants' motion, Plaintiffs maintain that when an IIED claim is based on conduct that constitutes malicious prosecution, the IIED claim does not accrue until the malicious prosecution ceases. *See Carroccia v. Anderson,* 249 F.Supp.2d 1016, 1028 (N.D. Ill. 2003) ("courts in this district have consistently held that IIED claims based on facts alleged in parallel claims for malicious prosecution accrue only when state criminal proceedings are terminated") (collecting cases); *see, e.g., Gvozden v. Mill Run Tours, Inc.,* 2011 WL 1118704, at *10 (N.D. Ill. Mar. 28, 2011).  Because Plaintiffs' IIED claim is based on the facts that support Plaintiffs' malicious prosecution claim, Plaintiffs' IIED claim did not accrue until the charges against them were dismissed on April 28, 2010.  Plaintiffs filed the present lawsuit on April 28, 2011, therefore, their IIED claim is timely.

Defendants also argue that Plaintiffs have failed to adequately plead their IIED claim because they have not alleged facts establishing that Jones' conduct was extreme and outrageous.  To establish an IIED claim under

Illinois law, a plaintiff must prove that: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen–El,* 602 F.3d at 864 (citing *Kolegas v. Heftel Broad. Corp.,* 154 Ill.2d 1, 180 Ill.Dec. 307, 607 N.E.2d 201, 211 (1992)). "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Id.* (quoting *Kolegas,* 154 Ill.2d at 21, 180 Ill.Dec. 307, 607 N.E.2d 201); *see also Fox v. Hayes,* 600 F.3d 819, 842 (7th Cir. 2010).

Defendants' bare-boned argument that Jones' conduct was not extreme and outrageous because he just followed the Plaintiffs around the library is not compelling. Here, Plaintiffs allege that Jones not only followed them around the library, but that he called the police and falsely accused Plaintiffs of breaking the law. Also, Jones' conduct, according to the allegations in the First Amended Complaint, led to the Defendant Police Officers beating and arresting Wallace while Russ and their child watched. Plaintiffs also allege that Jones contributed to the commencement of the criminal proceedings against them. At this stage of the litigation, Plaintiffs have alleged sufficient facts to state a claim against Jones that is plausible on its face, especially because Defendants fail to offer any legal authority that the conduct alleged is insufficiently extreme and outrageous as a matter of law. *See Twombly,* 550 U.S. at 570; *Cooney v. Casady*, 652 F.Supp.2d 948, 959 (N.D. Ill. 2009). The Court therefore denies Defendants' motion to dismiss Count VIII against Jones.

## IV. Count IX – State Law Conspiracy Claim

Defendants argue that Plaintiffs' state law conspiracy claim is barred by the Illinois Tort Immunity Act's one year limitations period. *See Evans,* 434 F.3d at 934. Defendants' argument fails because Plaintiffs' underlying malicious prosecution and IIED claims are timely, and thus their state law conspiracy claim as alleged against Jones is also timely. *See Hill v. City of Chicago,* No. 06 C 6772, 2007 WL 1424211, at *6 (N.D. Ill. May 10, 2007); *Patterson v. Burge,* 328 F.Supp.2d 878, 902 (N.D. Ill. 2004).

Under Illinois law, "[c]ivil conspiracy consists of an agreement to accomplish an unlawful purpose and 'an overt act in furtherance of the conspiracy" that is "tortious or unlawful in character.'" *In re Repository Tech., Inc.,* 601 F.3d 710, 726 (7th Cir. 2010) (quoting *Adcock v. Brakegate, Ltd.,* 164 Ill.2d 54, 206 Ill.Dec. 636, 645 N.E.2d 888, 894 (Ill. 1994)). In their First Amended Complaint, Plaintiffs allege that Defendants entered into an agreement to subject Plaintiffs to judicial proceedings that were not supported by probable cause. (First Am. Compl. ¶¶ 26, 72.) Defendants argue that Plaintiffs do not allege specific facts that show Jones agreed to conspire with the other Defendants and acted in furtherance of the conspiratorial agreement.

Bare allegations of conspiracy do not give defendants notice of enough information to prepare their responsive pleadings. *See Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). Therefore, courts generally "require the plaintiff to allege the parties, the general purpose, and the approximate date of the conspiracy." *Id.* Here, Plaintiffs have sufficiently provided this information in their First Amended Complaint. As such, they have properly alleged their conspiracy claim under the federal notice pleading standards. *See, e.g., Stereo Optical Co., Inc. v. Judy,* No. 08 C 2512, 2008 WL 4185689, at *5 (N.D. Ill. Sept. 8, 2008). The Court thus denies Defendants' motion to dismiss Count IX against Jones.

## IV. Counts X and XI – Respondeat Superior and Indemnification Claims

Finally, Defendants argue that Counts X and XI are derivative of the malicious prosecution, IIED, and state law conspiracy against Jones and because Plaintiffs have failed to properly allege these claims or that these claims are untimely, the Library District and the Board cannot be held liable. As discussed above, because Plaintiffs' claims are timely and adequate under the federal notice pleading standard, Defendants' arguments fail. The Court denies Defendants' motion as to Counts X and XI of the First Amended Complaint.